**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIE DAVIS,** | : | **Civil No. 3:13-CV-2279** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Mariani)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **LT. SAYLOR, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

The plaintiff, Willis Davis, is a federal inmate housed at the United States Penitentiary, Lewisburg.  Davis is also a prodigious, and prodigiously unsuccessful, civil litigant, who has had numerous cases dismissed either as frivolous, for failure to exhaust administrative remedies  or on the grounds that the lawsuit failed to state a claim upon which relief could be granted.[1]

---

[1]Davis v. Thomas, No. 3:13-CV-2776; Davis v. Thomas, No. 3:12-CV-1997; Davis v. Thomas, No. 3:13-CV-2181; Davis v. Jordan, 3:13-CV-1107; Davis v. Thomas, No. 3:13-CV-1710; Davis v. Brown, No. 3:12-CV-1294.

It is against the backdrop of this history of unsuccessful, unexhausted and meritless filings that Davis instituted the current lawsuit on August 30, 2013. (Doc. 1) Davis' *pro se* complaint alleged that he had been subjected to excessive force, and had experienced deliberate indifference to his medical needs, during and immediately following a cell extraction which had taken place six days earlier, on August 24, 2013. (Id.)

When he filed this complaint Davis candidly acknowledged that he had not exhausted his administrative remedies with respect to these matters, something he is required to do prior to proceeding to federal court. (Id.) Davis then provided a series of conflicting, contradictory, and mutually inconsistent reasons for this acknowledged failure to exhaust his administrative remedies, noting first in his complaint that some non-party correctional staff allegedly discouraged him from exhausting these remedies. (Id.) As to this initial claim made by Davis, Davis asserted that staff attempted to dissuade him from grieving this matter on August 26, 2013, (id.), yet Davis signed and submitted his civil complaint to the Court on the following day, August 27, 2013. (Id.) Thus, it is apparent that Davis was not dissuaded in the slightest from pursuing this matter. Davis provided no explanation regarding why this alleged, but wholly unsuccessful, staff effort at dissuading him from litigating this matter should excuse his complete failure to exhaust his administrative remedies.

Davis has now abandoned this implausible argument, preferring instead to contend that his complaint, which makes allegations of retaliation, is somehow exempt from any statutory exhaustion requirement. (Docs. 21-23)

In fact, it is clear that Davis had administrative remedies available to him at the time of this August 24, 2013, incident. It is undisputed that the Federal Bureau of Prisons has an administrative remedy procedure with respect to inmate complaints. 28 C.F.R. § 542.10. The procedure allows an inmate to seek formal review of an issue relating to any aspect of his own confinement. See 28 C.F.R. § 542.10(a). If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the BOP will refer the inmate to the appropriate statutorily-mandated procedures. See id. § 542.10(c). Inmates are to informally present their complaints to the staff and staff are to attempt to resolve the matter. See id. § 542.13(a). If the informal resolution is unsuccessful, the inmate is then to execute the appropriate form to bring the matter to the attention of the warden. The warden then responds to the inmate's complaint within 20 calendar days. Id., § 542.18. If an inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director within 20 calendar days. See id. § 542.15(a). If the response of the Regional Director is not satisfactory, the inmate may then appeal to the Bureau of Prisons Central Office within 30 calendar days, which office is the final

administrative appeal in the federal prison system.  No administrative remedy appeal is considered to have been fully exhausted until rejected by the Bureau of Prisons' Central Office.   Given the timetables prescribed by these prison rules for the exhaustion of grievances, it is also apparent that it would have been physically impossible for Davis to fully exhaust his grievances before commencing this lawsuit, since Davis drafted his complaint three days after the incident alleged in the complaint, and filed this action a mere six days after these events.

Presented with this plainly unexhausted grievance and complaint, the defendants have filed a motion for summary judgment in this case. (Doc. 14)  That motion, in part, raises Davis' admitted failure to exhaust as a defense to this lawsuit. (Id.)  Davis has now responded to this motion, filing pleadings styled as a motion to dismiss this summary judgment motion, (Docs. 21-23), which is, in reality, a response in opposition to this dispositive motion.  In these pleadings, Davis now seems to abandon his prior, wholly implausible claim that he was completely dissuaded from filing a grievance, but was not persuaded in the slightest to refrain from filing a federal lawsuit.  Instead, Davis simply argues that the exhaustion requirement otherwise prescribed by law should not apply to inmate retaliation claims. (Id.)  On the basis of this thin reed, Davis resists summary judgment on his admitted, and complete, failure to exhaust his administrative remedies.

For the reasons set forth below, it is recommended that the defendants' motion for summary judgment, (Doc. 14), be granted on the grounds that Davis failed to exhaust his administrative remedies, and Davis' motion to dismiss this summary judgment motion, which is in reality a response in opposition to that motion, (Doc. 21), be denied.

## II.   **Discussion**

### A.   **Rule 56–The Legal Standard**

The defendants have moved for judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P., Rule 56.  Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality."  Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).  The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if

there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider

all evidence in the light most favorable to the party opposing the motion." <u>A.W. v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." <u>Countryside Oil Co., Inc. v. Travelers Ins. Co.</u>, 928 F.Supp. 474, 482 (D.N.J.1995).  Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate.  <u>See, e.g.</u>, <u>Synthes v. Globus Medical, Inc.</u>, No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); <u>Bouriez v. Carnegie Mellon Univ.</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); <u>Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc.</u>, 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." <u>Thimons v. PNC Bank, NA</u>, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted).  Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." <u>Fireman's Ins. Co. Of Newark NJ v. DuFresne</u>, 676 F.2d 965, 968 (3d Cir. 1982), <u>see</u> <u>Sunshine Books,</u>

Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)." [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. Under the Local Rules, the failure to follow these instructions and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of

8

whether any genuine issue of material fact is in dispute.  Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis).  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant.  These rules apply with equal force to all parties.  <u>See</u> <u>Sanders v. Beard</u>, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); <u>Thomas v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## B.     The Prison Litigation Reform Act's Exhaustion Requirement

The defendants first urged the Court to grant summary judgment on the plaintiff's claims because Davis failed to fully exhaust the administrative remedies available to him under Bureau of Prisons' policies.  In this case Davis' failure to timely pursue these administrative remedies has substantive significance for the

plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made by Davis grounded in alleged violations of the Eighth Amendment.  See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).

Furthermore, absent extraordinary circumstances, courts have consistently rejected efforts like those made here by inmates to be excused from exhaustion, or to have their exhaustion requirements tolled, due to alleged fear of staff retaliation. McEachin v. Beard, 136 F. App'x 534, 535 (3d Cir. 2005); Hill v. Smith, 4:05-CV-1724, 2005 WL 2666597 (M.D. Pa. Oct. 19, 2005) aff'd, 186 F. App'x 271 (3d Cir. 2006).  Davis has pleaded no such extraordinary circumstances here, nor can he. Indeed, the undisputed facts recited in Davis' complaint show that he was entirely unintimidated by this alleged threat of retaliation since he drafted his civil lawsuit on August 27, 2013, the day after he alleged that he received this threat.  On these facts, no extraordinary circumstances justifying tolling of the exhaustion requirement have been shown.

Further, while this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies

in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances", Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis v. Warman, supra, 49 F. App'x at 368. See also Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts.  Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement.  Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005).  Nor can an inmate avoid this exhaustion requirement by merely alleging that prison policies were not clearly explained to him.  Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Furthermore, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust.  Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003).  Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed.  Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005)(failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

Thus, in this setting, the Prison Litigation Reform Act requires that an inmate fully exhaust his administrative remedies before proceeding into federal court, an administrative exhaustion requirement which entails full compliance with prison

14

grievance procedures and timelines, as well as the basic requisite that the inmate

identify those against whom he has a grievance during the administrative process

before he may name these individuals as defendants in a federal lawsuit.  Further,

absent extraordinary circumstances, an inmate may not be excused from exhaustion,

or to have this exhaustion requirements tolled, simply by voicing some vague and

factually unsupported claim of fear of staff retaliation.  See, e.g., McEachin v. Beard,

136 F. App'x 534, 535 (3d Cir. 2005); Hill v. Smith, 4:05-CV-1724, 2005 WL

2666597 (M.D. Pa. Oct. 19, 2005) aff'd, 186 F. App'x 271 (3d Cir. 2006).

## C.   Davis Has Failed to Properly Exhaust His Administrative Remedies

Judged against these guideposts, we find that the defendants are entitled to

summary judgment in their favor on the grounds that Davis failed to satisfy the

PLRA's administrative exhaustion requirement.  In this case, with respect to the

matters set forth in his complaint, it is entirely undisputed that Davis has never

exhausted his administrative remedies.  Davis cannot claim he was unaware of this

exhaustion requirement since it is clear that Davis was fully familiar with these

grievance procedures, having filed numerous grievances in the past.

Furthermore, we find that Davis has failed to carry his burden of proving "that

there was some extraordinary reason [s]he was prevented from complying with the

statutory mandate." <u>Davis v. Warman</u>, <u>supra</u>,  49 F. App'x at 368.  Davis' bald

assertion that he was dissuaded from filing a grievance, standing alone, plainly does

not carry this burden of proof.  Such an allegation simply does not constitute the type

of extraordinary circumstances justifying an excuse from this exhaustion requirement,

or tolling of this exhaustion requirement.  <u>McEachin v. Beard</u>, 136 F. App'x 534, 535

(3d Cir. 2005); <u>Hill v. Smith</u>, 4:05-CV-1724, 2005 WL 2666597 (M.D. Pa. Oct. 19,

2005) <u>aff'd,</u> 186 F. App'x 271 (3d Cir. 2006).  In fact, it is entirely clear that Davis

was wholly unintimidated by this alleged efforts at retaliation since he immediately

filed this lawsuit without exhausting his administrative remedies.

Moreover, it is completely undisputed that Davis filed this lawsuit within 6

days of this incident, a period of time which simply would not have permitted him to

fully exhaust his administrative remedies.  It is axiomatic that, for inmates, full

exhaustion is legal prerequisite to filing a federal civil rights lawsuit, and inmate-

plaintiffs like Davis may not avoid this requirement by simply commencing a

grievance, and then filing a lawsuit prior to completion of the grievance process.

<u>Ahmed v. Dragovich</u>, 297 F.3d 201, 209 n. 9 (3d Cir. 2002) citing <u>Perez v. Wis. Dep't

of Corr.</u>, 182 F.3d 532, 534–35 (7th Cir.1999) (observing "Congress could have

written a statute making exhaustion a precondition to judgment, but it did not.  The

actual statute makes exhaustion a precondition to *suit*"); <u>Neal v. Goord</u>, 267 F.3d 116,

122 (2d Cir.2001) (holding that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after filing her complaint in federal court).   Accord Jackson v. District of Columbia, 254 F.3d 262, 269 (D.C.Cir.2001); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir.1999); Alexander v. Hawk, 159 F.3d 1321, 1328 (11th Cir.1998); Garrett v. Hawk, 127 F.3d 1263, 1265 (10th Cir.1997).

Finally, Davis may not ignore this exhaustion requirement simply because he regarded exhaustion as futile.   Quite the contrary, it is well-settled that there is no futility exception to the PLRA's exhaustion requirement.   Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir. 2000).   Therefore, none of Davis' explanations or excuses provide the plaintiff with a license to either ignore or shortcut the grievance process, particularly in this case where Davis has not allowed the full grievance period to pass before he filed his lawsuit.   Rather, on these facts, which are entirely undisputed, it is clear that Davis had ample opportunity to comply with the requirements of the PLRA by fully grieving these matters.   His failure to do so, therefore, compels dismissal of this case.

## III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion for summary judgment (Doc. 14), be GRANTED, and the

17

plaintiff's motion to dismiss, this motion, which is actually a response in opposition to the motion, (Doc. 21), be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 24th day of January, 2014.


*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

18